UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REDFIN CORPORATION,<br><br>Defendant. | Case No.: 20-CV-2264-AJB-AGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>**(Doc. No. 3)** |

Presently pending before the Court is Defendant Redfin Corporation's ("Redfin") motion to compel arbitration and stay action. (Doc. No. 3.) Plaintiff Jason Bell ("Plaintiff") filed an opposition to the motion. (Doc. No. 11.) Redfin replied. (Doc. No. 12.) For the reasons given below, the Court **GRANTS** Redfin's motion, **ORDERS** the parties to arbitration, and **STAYS** the remaining PAGA claims pending resolution of the arbitration.

## I.   BACKGROUND

This is a wage and hour and misclassification putative class action. Redfin is a real estate broker, providing brokerage services. Plaintiff asserts two separate legal theories based on his two different real estate sales agent roles with Redfin. One role was as an employee, and his other role was as an independent contractor. Plaintiff was hired as an "Agent" employee on November 30, 2018. In his employee role, Plaintiff was responsible for overseeing real estate transactions between Redfin and its customers. Two days later,

on December 2, 2018, Plaintiff was hired as an "Associate Agent" to perform services as an independent contractor. In his independent contractor role, Plaintiff handled "field events" such as open houses and home tours. The independent contractor role required a real estate license. As a result of his employment, Plaintiff entered into two different arbitration agreements for the two different roles.

### A.   Plaintiff's Employee Arbitration Agreement

First, as an employee, Plaintiff entered into an "Employment Assignment, Arbitration and Confidentiality Agreement" ("the Employee Arbitration Agreement"). (*See* Declaration of Jane Anne Karp ("Karp Decl."), Doc. No. 3-3, Ex. A.) Paragraph 18 of this agreement speaks to the parties' rights with regard to arbitration. The relevant portion of the Employee Arbitration Agreement provides that Plaintiff "agree[d] to submit to mandatory binding arbitration any and all claims arising out of or related in any way to [his] employment or termination thereof, compensation, . . . the relationship between the parties, and this Agreement (collectively, "Arbitrable Claims")." (Karp Decl., Ex. A, ¶ 18(a).) Plaintiff and Redfin also agreed "that no class or collective actions can be asserted in arbitration or otherwise" with the exception of claims under the California Private Attorneys General Act of 2004 ("PAGA"). (*Id.*) However, "[a]ll other non-PAGA claims, whether in arbitration or otherwise, must be brought solely in [Plaintiff] or Company's individual capacity, and not as a plaintiff or class member in any purported class or collective proceeding." (*Id.*) The agreement further provides in all capitalized letters: "SUBJECT TO THE ABOVE, THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS. THE PARTIES FURTHER WAIVE ANY RIGHTS THEY MAY HAVE TO PURSUE OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION PERTAINING TO ANY CLAIMS BETWEEN THEM, EXCEPT AS PROVIDED ABOVE." (*Id.*) Lastly, the agreement vests in the arbitrator the "sole and exclusive authority" to determine the "arbitrator's jurisdiction," "application of this [arbitration agreement] to any dispute between the parties," its "enforceability," and "questions of procedural and substantive

unconscionability." (*Id.* at ¶ 18(b).)

### B.  Plaintiff's Independent Contractor Arbitration Agreement

In his position as an independent contractor, Plaintiff also signed an "Associate Agent Independent Contractor and Arbitration Agreement" ("the Contractor Arbitration Agreement"). (Declaration of Jennifer Patchen ("Patchen Decl."), Doc. No. 3-4, Ex. B.) Like the Employee Arbitration Agreement, in this Contractor Arbitration Agreement, Plaintiff and Redfin "agree[d] to submit to mandatory binding arbitration any and all claims arising out of or related to the relationship between the parties, this Agreement and the termination thereof (collectively, "Arbitrable Claims")." (*Id.* ¶ 8.) The agreement also provided that "no class or representative actions can be asserted in arbitration or otherwise." (*Id.*) In addition, the agreement states, "SUBJECT TO THE ABOVE, THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS. THE PARTIES FURTHER WAIVE ANY RIGHTS THEY MAY HAVE TO PURSUE OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION PERTAINING TO ANY CLAIMS BETWEEN THEM." (*Id.*) Finally, the agreement also provided that, "[t]he arbitrator shall have the sole and exclusive authority to determine the arbitrator's jurisdiction and the application of this Agreement to any dispute between the parties. The arbitrator shall have the sole and exclusive authority to determine the enforceability of this Agreement and any provisions contained herein. The arbitrator shall have the sole and exclusive authority to determine questions of procedural and/or substantive unconscionability." (*Id.*)

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). "The

FAA 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (emphasis in original). Accordingly, the Court's role under the FAA is to determine "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Court must also determine "whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce" and is therefore governed by the FAA. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d (N.D. Cal. 2004) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)). If these factors are met, the Court must enforce the arbitration agreement according to its terms. *See* 9 U.S.C. § 4. However, "if there is a genuine dispute of material fact as to any of these queries, a district court should apply a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Jenkins v. Sterling Jewelers, Inc.*, 17-cv-1999-MMA (BGS), 2018 WL 922386, at *2 (S.D. Cal. Feb. 16, 2018) (internal quotation omitted); *see also Porter v. Loyalty Mortgage, Inc.*, 07-cv-1930-JLS (BLM), 2008 WL 11509118, at *2 (S.D. Cal. Jan. 18, 2008) (citing 9 U.S.C. § 4).

      Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *See Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996); *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision."). The FAA provides that arbitration agreements are

unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). However, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

### III. DISCUSSION

Redfin seeks for the Court to order this matter to arbitration pursuant to the two arbitration agreements signed by Plaintiff. (Doc. No. 3.) Courts determining whether to compel arbitration must consider: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quotation marks and citations omitted). These "gateway issues" normally are for a court to decide but can be delegated to an arbitrator where the parties "clearly and unmistakably" so provide. *Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011). Where a contract delegates the arbitrability question to the arbitrator, "the courts must respect the parties' decision as embodied in the contract" and "may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

//
//
//
//

Plaintiff does not meaningfully challenge the first gateway issue of the existence of an arbitration agreement.[1] Instead, the second gateway issue—whether the arbitration agreement in existence is enforceable—is disputed by the parties. Redfin contends that this question must be answered by the arbitrator, not by the Court, because it has been "clearly and unmistakably" delegated to the arbitrator pursuant to the agreement's delegation clauses. (Doc. No. 12 at 4–6.) In opposition, Plaintiff takes issue with the delegation clauses, contending they are unclear, ambiguous, and unconscionable. (Doc. No. 11 at 11.) These arguments are addressed below.

### A.    Whether the Delegation Clauses are "Clear and Unmistakable"

Both the Employee and Contractor Arbitration Agreements contain a substantially identical delegation clause, which vests the arbitrator with the authority to: (1) "determine the arbitrator's jurisdiction and the application of the [a]greement[s]" to any dispute between the parties, (2) "determine the enforceability" of the agreements, and (3) determine questions of procedural and/or substantive unconscionability. (Karp Decl., Ex. A ¶ 18(b); Patchen Decl., Ex. B ¶ 8.) In an attempt to undermine the delegation clauses, Plaintiff points to other provisions supposedly inconsistent with this understanding to delegate threshold issues to an arbitrator. The Court will analyze whether the delegation clauses in both the Contractor and Employee Arbitration Agreements are "clear and unmistakable."

### 1.    The Contractor Arbitration Agreement

With respect to the Contractor Arbitration Agreement, Plaintiff highlights a severability provision which empowers ***both*** a court or an arbitrator with the authority to hold the agreement invalid and unenforceable. (Doc. No. 11 at 11.) The relevant

---

[1] Plaintiff maintains that there are two separate agreements at issue, which creates an ambiguity as to which agreement applies. (Doc. No. 11 at 13.) But because Plaintiff does not dispute that his lawsuit is based on his roles as both an employee and independent contractor, the Court will proceed to analyze both arbitration agreements together.

severability provision states:

> "If any provision of this Agreement is found or held to be invalid or unenforceable by ***any court or arbitrator of competent jurisdiction***, then the meaning of such provision will be construed, to the extent feasible, so as to render the provision enforceable, and if no feasible interpretation would save such provision, it will be severed from the remainder of this Agreement."

(Patchen Decl., Ex. B ¶ 11(g) (emphasis added).)

Plaintiff reasons that this severability provision contemplates court involvement in disputes involving the enforceability of the arbitration provision, and contradicts the delegation clause, rendering the delegation clause ambiguous. The Court is not persuaded by Plaintiff's argument for at least three reasons. First, Plaintiff's cited authority is inapposite because those cases involved severability clauses suggesting that only a court must find the agreement unenforceable. *See Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1566 (2009) ("Use of the term 'trier of fact of competent jurisdiction' instead of 'arbitration panel' . . . suggests the trial court also may find a provision, including the arbitration provision, unenforceable."); *Hartley v. Superior Court*, 196 Cal. App. 4th 1249, 1258 (2011) ("[T]he severability clause here uses the term 'trier of fact of competent jurisdiction,' rather than the term 'arbitrator,' indicating the court has authority to decide whether an arbitration provision is unenforceable."). By contrast, here, the severability clause in this case refers to enforceability decisions by "a court *or* arbitrator." It does not entrust preliminary issues solely to the courts.

Second, the Contract Arbitration Agreement in this case also makes clear that the delegation of issues to an arbitrator does not foreclose the possibility of ***any*** court involvement. For example, the agreement provides that, "[a] court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration." (Patchen Decl., Ex. B ¶ 8.) Because this provision contemplates the possibility of some court involvement, the Court cannot conclude that the severability clause's reference to court decisions renders the delegation clause ambiguous or contradictory. *See, e.g., McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL

4551484, at *4 (N.D. Cal. Oct. 11, 2017) (holding that a severability statement "does not make ambiguous the parties' delegation of gateway issues" where, among other things, the contract allowed individuals to opt out of arbitration and bring suits for injunctive relief without having to arbitrate).

Third, this holding is also in accord with several other district courts, which have likewise rejected similar arguments regarding purportedly inconsistent delegation clauses. *See, e.g., Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (severability provision did not render delegation clause ambiguous because "an express delegation provision clause is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court."); *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018) (severability provision granting authority to a "court of competent jurisdiction" did not render ambiguous a clause delegating to an arbitrator the "determination of the scope of applicability . . . to arbitrate.").

For these reasons, the Court holds that a plain reading of the delegation clause shows a "clear and unmistakable" intent to delegate threshold matters to an arbitrator.

### 2. The Employee Arbitration Agreement

Using a similar strategy, Plaintiff argues there is ambiguity as to the parties' intent to delegate because of a provision dealing with PAGA claims in the Employee Arbitration Agreement. In accordance with California law, the arbitration agreement allows for the assertion of PAGA claims as class actions, in court, but also provides that, "[a]ll other, non-PAGA claims, where in arbitration *or otherwise*, must be brought solely in [Plaintiff] or Company's individual capacity. . . ." (Karp Decl., Ex. A ¶ 18(a).) Plaintiff claims "[t]his language leads a reader to believe that claims, even non-PAGA claims, may be brought in a non-arbitration forum." (Doc. No. 11 at 15.)

Just like with the Contractor Arbitration Agreement, the Employee Arbitration Agreement does not strip courts of law of all authority to decide disputes between the parties. For example, the Employee Arbitration Agreement also anticipates that any a court

may determine the enforceability of an arbitration award. (*See* Karp Decl., Ex. A ¶ 18(e).) In light of this, the "arbitration or otherwise" language is not inconsistent with the agreement's clear intent to delegate threshold questions to an arbitrator. Moreover, Redfin correctly points out, "[t]he provision acts as a backstop wherein if the arbitration clause is found invalid, then the class action waiver may still be found enforceable if the action is prosecuted in a court of law." (Doc. No. 12 at 6.)

In sum, Plaintiff's readings of the Arbitration Agreements are incorrect. The Contractor Arbitration Agreement and the Employee Arbitration Agreement both clearly and unmistakably delegate gateway issues to an arbitrator. It states without equivocation that an "arbitrator will have the sole and exclusive authority to determine the arbitrator's jurisdiction and the application of this Agreement to any dispute between the parties." (Karp Decl., Ex. A ¶ 18(b); Patchen Decl., Ex. B ¶ 8.) To be even clearer, the agreements both provide that the arbitrator has "the sole and exclusive authority to determine the enforceability of this Agreement and any provisions contained herein." (*Id.*) Enforcing this agreement comports with the strong federal policy favoring the resolution of disputes through arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

### B.   Unconscionability

Secondly, Plaintiff puts forth arguments regarding the unconscionability of the arbitration agreements. But Plaintiff fails to provide unconscionability arguments specific to the delegation provision. Because Plaintiff failed to "make any arguments specific to the delegation provision, and instead argued that the [Arbitration Agreements] as a whole [are] unconscionable . . ., [the Court] need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question." *Brennan*, 796 F.3d at 1133 (internal citations and quotations omitted). In addition, the Court notes that the delegation clause provides that questions surrounding procedural or substantive unconscionability rests with an arbitrator, and not the Court. (Karp Decl., Ex.

A ¶ 18(b); Patchen Decl., Ex. B ¶ 8.)

### C. Request for a Stay

Lastly, Redfin requests that Plaintiff's PAGA claims be stayed pending the resolution of the arbitration. (Doc. No. 3-1 at 26.) The Employee Arbitration Agreement provides that "no class or collective actions can be asserted in arbitration or otherwise, except for claims under the California Private Attorneys General Act ("PAGA"), which may be brought in any forum permitted by law." (Karp Decl. ¶ 18(a).) The Contractor Arbitration Agreement stated, "[u]nless prohibited by state or local law, Associate Agent hereby waives his, her, or its right to bring an action under any private attorney general act on behalf of persons other than Associate Agent." (Patchen Decl. ¶ 8.) Under California law, PAGA waivers are unenforceable, and courts cannot order PAGA claims to arbitration. *See Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014) (holding waivers of representative PAGA claims are unenforceable); *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 431 (9th Cir. 2015) (confirming the FAA does not conflict with, or preempt, *Iskanian's* holding).

In opposition, Plaintiff only argues that this issue is moot because the arbitration agreement is unenforceable. However, because the Court disagrees, and because the PAGA claims and the arbitrable claims are interconnected, efficiency counsels in favor of a stay. Indeed, district courts in the Ninth Circuit have routinely stayed PAGA claims actions under similar circumstances. *See, e.g.*, *Musolf v. NRC Env't Servs., Inc.*, No. 2:20-cv-01387-KJM-CKD, 2021 WL 1696282, at *3 (E.D. Cal. Apr. 29, 2021) ("Given the entanglement of the non-arbitrable PAGA claim for civil penalties with the other [wage and hour] claims for damages, including in part a portion of the PAGA claim, the court stays the entire action here in the interests of efficiency, pending completion of arbitration."); *Lefevre v. Five Star Quality Care, Inc.*, No. 5:15-cv-01305-VAP-SPx, 2019 WL 6001563, at *9 (C.D. Cal. Nov. 12, 2019) (granting a motion to compel arbitration and staying the action pending completion of arbitration proceedings); *Gonzales v. Emeritus Corp.*, 407 F. Supp. 3d 862, 868 (N.D. Cal. 2019) ("[B]ecause plaintiff's PAGA claims are

derivative of the substantive claims which will proceed to arbitration, the representative PAGA claims are hereby [stayed] pending the results of the arbitration proceeding.").

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Redfin's motion, and **ORDERS** the parties to arbitration. In addition, the matter is **STAYED** pending resolution of the arbitration. The parties are **ORDERED** to notify the Court within seven (7) days of the issuance of an arbitration award or settlement.

**IT IS SO ORDERED.**

Dated: August 12, 2021

Hon. Anthony J. Battaglia
United States District Judge