**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Gil Melili, Esq. (SBN: 337116)
gil@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*,
JASON BELL and DEVIN COOK,
on behalf of themselves and on behalf of a Class of all other persons similarly situated

[Additional Counsel on Following Page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BELL, AND DEVIN COOK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> REDFIN CORPORATION, <br><br> Defendant. | **Case No.: 3:20-CV-02264-AJB-BGS** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> **DATE**: October 5, 2023 <br> **TIME**: 2:00 p.m. PST <br> **COURT**: 4A <br> **JUDGE**: Anthony J. Battaglia |

Todd. M. Friedman (SBN: 216752)
Adrian R. Bacon (SBN: 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, PC**
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
Email: tfriedman@toddflaw.com;
abacon@toddflaw.com

Richard E. Quintilone, II (SBN: 200995)
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Suite 100
Lake Forest, CA 92630
Telephone: (949) 458-9675
Facsimile: (949) 458-9679
Email: req@quintlaw.com

Additional Counsel for Plaintiffs JASON BELL and DEVIN COOK on behalf of
themselves and on behalf of a Class of all other persons similarly situated

KAZEROUNI
LAW GROUP, APC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  PROCEDURAL HISTORY ........................................................................3

III. THE CLASS ALLEGATIONS ...................................................................5

IV.  SETTLEMENT ..........................................................................................6

   A. The Final Approval Hearing.................................................................6

   B. Attorneys' Fees, Costs, and Service Awards........................................7

   C. The Terms of the Settlement Agreement..............................................7

      1. The Settlement Class .......................................................................7

      2. Settlement Relief .............................................................................8

V.   SETTLEMENT ADMINISTRATION .........................................................8

   A. Class Notice .........................................................................................8

   B. No Objections and Only Fifteen Requests for Exclusion....................9

   C. Settlement Checks..............................................................................10

VI.  THE SETTLEMENT SHOULD BE FINALLY APPROVED
     BECAUSE IT IS FUNDAMENTALLY FAIR, REASONABLE, AND
     ADEQUATE...........................................................................................11

   A. The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23 .................11

   B. The Settlement Should be Finally Approved by the Court .............................11

      1. The Strength of the Lawsuit and the Risk, Expense, Complexity, and Likely
         Duration of Further Litigation .......................................................13

2. The Amount Offered in Settlement ................................................ 15

3. Settlement Class members were Provided with the Best Notice Practicable,

Affording Them an Opportunity to Determine Whether to Participate in the

Settlement .......................................................................................... 17

4. The Extent of Discovery Completed ............................................. 17

5. The Experience and Views of Counsel ......................................... 17

6. Positive Reaction of Settlement Class Members .......................... 18

**VII.   CALIFORNIA CONTROLLER'S OFFICE WILL RECEIVE
UNCLAIMED FUNDS** ............................................................................ **19**

**VIII.  CONCLUSION** ......................................................................... **19**

# TABLE OF AUTHORITIES

**CASES**

Alvarado v. Fed. Express Corp.,

384 F. App'x 585 (9th Cir. 2010) ..................................................................14

Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act. Litig.),

80 F. Supp. 3d 781, 791 (N.D. Cal. Feb. 12, 2015) .....................................15

Berkey Photo, Inc. v. Eastman Kodak Co.,

603 F.2d 623 (2d Cir. 1979) .........................................................................14

Boyd v. Bechtel Corp.,

485 F. Supp. 610 (N.D. Cal. 1979) ..............................................................17

Castillo v. Sheraton Operating Corp.,

No. CV 17-7091 FMO (ASx), 2020 U.S. Dist. LEXIS 38496, at *14-15 (C.D. Cal. Mar. 4, 2020) ...........................................................................................10

Caudle v. Sprint/United Mgmt. Co.,

 No. C 17-06874 WHA, 2018 U.S. Dist. LEXIS 213079, at *19 (N.D. Cal. Dec. 18, 2018) .........................................................................................................14

Chavez v. Converse, Inc.,

No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679, at *13 (N.D. Cal. Nov. 25, 2020) ...............................................................................................................12

Churchill Vill., L.L.C. v. G.E.,

361 F.3d 566 (9th Cir. 2004) .......................................................................12

Class Plaintiffs v. Seattle,

955 F.2d 1268 (9th Cir. 1992) .....................................................................12

Coleman v. Jenny Craig, Inc.,

No. 11cv1301-MMA (DHB), 2013 U.S. Dist. LEXIS 176294, at *39 (S.D. Cal. Nov. 27, 2013) ...............................................................................................14

Couser v. Comenity Bank,

125 F. Supp. 3d 1034 (S.D. Cal. 2015)................................................................19

Create-A-Card, Inc. v. INTUIT, Inc.,

No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *14-15 (N.D. Cal. Sep.
    22, 2009) .......................................................................................................12

Elliott v. Rolling Frito-Lay Sales, LP,

No. SACV 11-01730 DOC (ANx), 2014 U.S. Dist. LEXIS 83796, at *19-20 (C.D.
    Cal. June 12, 2014) .......................................................................................16

Ellis v. Naval Air Rework Facility,

87 F.R.D. 15 (N.D. Cal. 1980)..........................................................................18

Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,

No. CV13-5963 PSG (GJSx), 2017 U.S. Dist. LEXIS 199172, at (C.D. Cal. May
    8, 2017) .........................................................................................................10

Hanlon v. Chrysler Corp.,

150 F.3d(9th Cir. 1998) ...........................................................................11,12

In re Ferrero Litig.,

No. 11-CV-00205-H (CAB), 2012 U.S. Dist. LEXIS 15174, at *6 (S.D. Cal. Jan.
    23, 2012) .......................................................................................................17

In re Portal Software, Inc.

Sec. Litig., No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *9 (N.D. Cal.
    Nov. 26, 2007) ..............................................................................................16

Kang v. Wells Fargo Bank, N.A.,

No. 17-cv-06220-BLF, 2021 U.S. Dist. LEXIS 235254 (N.D. Cal. Dec. 8, 2021) 10

Linney v. Cellular Alaska P'ship,

151 F.3d 1234 (9th Cir. 1988) ...........................................................................17

Morey v. Louis Vuitton N. Am. Inc.,

No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331 (S.D. Cal. Jan. 9,
    2014) .............................................................................................................17

M. Berenson Co. v. Faneuil Hall Marketplace,

KAZEROUNI
LAW GROUP, APC

671 F. Supp. 819 (D. Mass. 1987) ..........................................................12

Nat'l Rural Telecoms. Coop. v. Directv, Inc.,

221 F.R.D. 523 (C.D. Cal. 2004) ......................................................13,18

Nwabueze v. AT&T Inc.,

No. C 09-01529 SI, 2013 U.S. Dist. LEXIS 169270, (N.D. Cal. Nov. 27, 2013)..12,

Officers for Justice v. Civil Serv. Com.,

688 F.2d 615 (9th Cir. 1982) ........................................................11,12,14

Rodriguez v. West Publishing Corp.,

563 F.3d 948(9th Cir. 2009) ..................................................................12

Romero v. Producers Dairy Foods, Inc.,

235 F.R.D. 474 (E.D. Cal. 2006) ...........................................................17

Schiller v. David's Bridal, Inc.,

No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776 (E.D. Cal. June 11,

    2012) ...............................................................................................16

Schuchardt v. Law Office of Rory W. Clark,

314 F.R.D. 673 (N.D. Cal. 2016)............................................................17

Silber v. Mabon,

18 F.3d 1449 (9th Cir. 1994) .................................................................17

Spence-Ruper v. Scientiae,

No. 8:19-cv-01709-DOC-ADS, 2021 U.S. Dist. LEXIS 204242,(C.D. Cal. Sept.

    24, 2021)..........................................................................................11

Staton v. Boeing Co.,

327 F.3d 938 (9th Cir. 2003) .................................................................11

United States v. Armour & Co.,

402 U.S. 673 (1971)...............................................................................14

Wert v. United States Bancorp,

No. 13-cv-3130-BAS-AGS, 2017 U.S. Dist. LEXIS 185428 (S.D. Cal. Nov. 7,

    2017)...............................................................................................16

**STATUTES**

Cal. Civ. Proc. Code § 384 .......................................................................19

Cal. Lab. Code § 2802 ...............................................................................5

Cal. Lab. Code §§ 2698 .............................................................................5

**OTHER AUTHORITIES**

David R. Hodas, Enforcement of Environmental Law in A Triangular Federal
   System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by
   the United States, the States, and Their Citizens?, 54 Md. L. Rev. 1552, 1657
   (1995)..................................................................................................2

**RULES**

Fed. R. Civ. P. 23 ...........................................................................4,7,11,16

## I.    INTRODUCTION

In accordance with the Court's Order Granting Plaintiffs' Motion to Conditionally Certify Class and Granting Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement ("Preliminary Approval Order," Doc. 41), Plaintiffs Jason Bell ("Bell") and Devin Cook ("Cook") (together, the "Plaintiffs" or "Class Representatives") seek final approval of class action settlement with Defendant Redfin Corporation ("Redfin" or "Defendant") (collectively, the "Parties"). As such, Plaintiffs submit the Notice of Motion ("NOM"), this Memorandum in Support of Motion for Final Approval of Class Action Settlement ("Final Approval Motion"), the Declaration of Jason Bell ("Bell Decl."), the Declaration of Devin Cook ("Cook Decl."), the Declaration of Nicole Bench ("Admin Decl."), and the accompanying declarations of Class Counsel—i.e., Declaration of Adrian R. Bacon ("Bacon Decl."), Declaration of Abbas Kazerounian ("Kazerounian Decl."), Declaration of Gil Melili ("Melili Decl."), and Declaration of Richard E. Quintilone II, Esq. ("Quintilone Decl.")[1]—to that effect.

This settlement is the culmination of over three (3) years of litigation and provides for significant monetary relief to all Settlement Class Members allegedly harmed by Defendant's violations of the California Labor Code. The Settlement Agreement ("Agr.," Doc. 34-2 at 51-101[2]), reached after an all-day mediation session before Hon. Daniel Buckley (Ret.), of Signature Resolution, provides a considerable financial benefit of $3,000,000.00 in a non-reversionary common settlement fund ("Qualified Settlement Fund" or "QSF") to 2,754 Settlement Class Members who were part of the Associate Agent Class from April 30, 2017, through December 31, 2022, and/or the Employee Agent Class from November 20, 2016, through December 31, 2022.

---

[1] Due to the press of business, Mr. Quintilone's declaration and the Declaration of his Client Devin Cook will be filed at a later time.  The citations herein are to a draft reviewed by undersigned counsel.

[2] Defined terms are used as defined in the Settlement Agreement.

The QSF, to be paid into by Defendant, is an all-in, non-reversionary fund, that will pay each Settlement Class Member Individual Payment Amounts commensurate with the number of Qualifying Work Weeks each of them worked during the Class period.

Moreover, Settlement Class Members were all afforded a reasonable opportunity to receive their share of the Net Settlement Amount. First, Settlement Class Members were <u>not</u> required to submit a claim form, meaning that each Settlement Class Member not requesting exclusion (i.e., all Class Members) will automatically receive payment. Second, all Settlement Class Members were informed of the settlement by First-Class U.S. Mail, after the Settlement Administrator received the Settlement Class Members' last known addresses from Defendant and performed a search on the National Change of Address ("NCOA") database to ensure that the most current addresses were being used.

After subtracting the requested combined award of attorneys' fees and costs, Service Awards, and notice and administrative expenses from the QSF, all Settlement Class Members will be entitled to an estimated average gross payment of $658.13, with an estimated highest gross payment of $5,035.25.[3]

Finally, this settlement arguably creates an incentive for Defendant and other businesses to comply with California's wage and hour laws, which benefits the Class Members, employees in general, and compliant competitive businesses. *See* David R. Hodas, *Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?*, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.").

---

[3] Individual Payment Amounts are based on Qualifying Work Weeks, so a Class Member who worked more Work Weeks will receive a larger payout.

Given the foregoing, and as explained more thoroughly below, this settlement is fair, reasonable, and adequate. Accordingly, the settlement reached between the Parties should be given final approval.

## II.    PROCEDURAL HISTORY

On June 5, 2020, Bell notified the Labor and Workforce Development Agency ("LWDA") of his claims against Defendant. Bel then initiated the instant action on November 20, 2020, when he filed his Class Action Complaint, alleging various California labor law violations against Defendant. *See* Doc. No. 1. On December 2, 2020, Defendant filed a Motion to Compel Arbitration and Stay Action, which the Court granted, on August 12, 2021, staying Bell's Private Attorney General Act ("PAGA") claims pending arbitration. Doc. No. 16.

On August 29, 2019, Cook filed an action in the Superior Court of California, County of San Francisco, alleging similar California labor law violations against Defendant. On January 30, 2020, Cook filed a First Amended PAGA Complaint, removing all previous causes of action other than for civil penalties under PAGA.

Significant formal and informal discovery was exchanged, including data produced by Defendant for thousands of workers, showing workers' total pay and dates of employment, time and payroll records, and policy and procedure documents. In total, discovery yielded payroll data for 2,034 workers, covering 661,050 shifts, and 112,326 Work Weeks, as well as written discovery responses from Defendant.

On May 23, 2022, the Parties participated in an all-day mediation session before Hon. Daniel Buckley (Ret.). As a former judge of the Los Angeles Superior Court's Complex Litigation department, with extensive experience in mediating wage-and-hour class actions, Judge Buckley was intimately familiar with the types of claims at issue in this case. With his assistance, the full-day mediation eventually resulted in a global settlement in principle after a mediator's proposal was accepted by all Parties. While the Parties agreed to the basic terms of the Settlement

Agreement, it took several months for the Parties to engage in confirmatory discovery and negotiations over the particular terms of the long-form Settlement Agreement.

Once the Settlement Agreement was fully-executed and confirmatory discovery was complete, the Parties filed a Joint Motion to List Stay and File Amended Complaint (Doc. No. 30), which the Court granted on March 21, 2023 (Doc. No. 31). That same day, Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") asserting all claims alleged in both actions against Defendant. Doc. No. 32.

On April 7, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Preliminary Approval Motion"). Doc. No 34. And, on May 1, 2023, Plaintiffs submitted the Supplemental Declaration of Adrian R. Bacon in support of the Preliminary Approval Motion. Doc. No. 40. On May 4, 20223, the Court (1) Granting Plaintiffs' Motion to Conditionally Certify Class; and (2) Granting Plaintiffs' Motion for Preliminary Approval of Class Action and PAGA Settlement. Doc. No. 41.

On June 29, 2023, ILYM, the Settlement Administrator for this case, sent Notice Packets to 2,769 Settlement Class Members via First-Class U.S. Mail, after receiving class data from Defendant and updating addresses based on most recent NCOA data. Admin. Decl. ¶ 8. Of the 2,769 notices that were mailed out, only 192 were recorded as returned, 145 as remailed, and 52 as undeliverable. *Id.* ¶ 11-13. This amounts to direct mail notice reaching about 98.12% of the Settlement Class.

Plaintiffs now submit this Motion for Final Approval of Class Action Settlement. Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs seek final certification and approval of the proposed Settlement, as well as approval of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. Specifically, Plaintiffs respectfully request the Court enter a Final Judgment and Order of Dismissal with Prejudice pursuant to the proposed order submitted with this motion.

### III.   THE CLASS ALLEGATIONS

From November 20, 2016, through December 31, 2022, Plaintiffs and other similarly situated individuals worked as real estate agents for Defendant in the State of California. Defendant paid agents under two structures, one structure as employees ("Employee Agents") and another as independent contractors ("Associate Agents"). Bell worked for Defendant from January 2019 to December 2019, first as an Employee Agent, and next as an Associate Agent. Cook worked for Defendant from about May 4, 2016, to June 18, 2019, as an Associate Agent. Associate Agents and Employee Agents assert the same claims but were treated, for purposes of those claims, differently by Defendant under different California Labor Code exemptions.

Plaintiffs contend they and other Class Members were not paid all wages owed. For instance, as with the other aggrieved Class Members, Plaintiffs claim they worked a substantial number of overtime and regular work hours for which they did not receive compensation at the correct wage rate, as they would be forced to work off-the-clock and without pay. Additionally, given the nature of their work, Plaintiffs allege that they and other Class members were unable to take lawfully compliant meal and rest breaks and were thereafter denied an additional hour of pay. Plaintiffs further allege that Defendant failed to reimburse reasonable business expenses pursuant to Cal. Lab. Code § 2802. Given these alleged violations, Defendant also failed to provide Plaintiffs and other aggrieved Class Members all wages due and accurate paystubs. Finally, Plaintiffs allege Defendant violated PAGA, Cal. Lab. Code §§ 2698, *et seq.* Defendant, on the other hand, contends that, at all times relevant, its policies and practices were fully complaint with California law and that Class Members were exempt from the requirements of the California Labor Code, as claimed by Plaintiffs.

Despite their differing opinions on the matter, the Parties have agreed to the terms of the Settlement Agreement after having weighed the risks associated with

1  continued litigation and the benefits of resolving this lawsuit for the benefit of the
2  Settlement Class.

3  **IV.    SETTLEMENT**

4         In an earnest attempt to settle this action and avoid the delays and risks
5  inherent in proceeding to trial, the Parties discussed settlement on several occasions.
6  As noted in the Preliminary Approval Motion, the Settlement Agreement resulted
7  from extensive arm's-length negotiations, including a full-day mediation session
8  before Hon. Daniel Buckley (Ret.) of Signature Resolution, on May 23, 2022, and
9  several months of follow-up negotiations and confirmatory discovery. Doc. No. 34-
10 1 at 12, 24. The Parties also conducted substantial discovery as to Plaintiffs'
11 individual and class claims, including formal written discovery and informal pre-
12 mediation discovery in which Defendant identified the total number of Class
13 Members as well as the total Work Weeks worked by each Class Member. *Id.* at
14 11-12, 29-30. Moreover, Class Counsel have vigorously litigated this matter since
15 its inception, overcoming a motion for summary judgment and appeal (in Cook's
16 state matter) and briefing a motion to compel arbitration (in Bell's federal matter).
17 *Id.* at 24.

18        The significant time and effort spent on litigation, discovery, and settlement
19 negotiations, as well as the time spent in mediation with an experienced mediator,
20 militate in favor of final approval of the proposed settlement, as such factors
21 indicate that there was no collusion among the Parties. This action has been ongoing
22 since August 29, 2019, and the efforts of Class Counsel to reach a compromise in
23 the form of a proposed class settlement proved fruitful, resulting in a mutual
24 understanding, the terms of which are memorialized in the Settlement Agreement.

25        **A.    The Final Approval Hearing**

26        At the Final Approval Hearing scheduled for October 5, 2023, the Court will
27 consider Plaintiffs' Motion for Attorneys' Fees and Costs (the "Fee Brief") by cross
28 checking "the requested amount with the lodestar amount based on counsels'

submission and will determine whether the award is reasonable . . ..” Doc. No. 41 at 16. The Court will also determine whether the settlement here is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e)(2). *Id.* at 18.

## B. Attorneys' Fees, Costs, and Service Awards

As explained in the Fee Brief, Class Counsel seek $1,000,000.00 in attorneys' fees, which is one third of the common fund. Additionally, Class Counsel only seek $18,945.85 in costs[4] and $32,500.00 administrative expenses. Plaintiffs, therefore, respectfully requests that the Court enter the proposed Final Approval Order submitted herewith, which includes a provision for the requested attorneys' fees, costs, Enhancement Award, and reasonable settlement notice and administrative expenses that were incurred by the Settlement Administrator.

## C. The Terms of the Settlement Agreement

This action has been preliminarily certified, for settlement purposes only, as a California wage and hour class action, providing for a $3,000,000.00 common fund. Doc. No. 41.

### 1. The Settlement Class

The Settlement Class is defined as follows:

> "Associate Agent Class" shall mean all Associate Agents who provided services to Defendant as Independent Contractors in California during the period April 30, 2017 through December 31, 2022 (the "Associate Agent Class Period").

> "Employee Agent Class" shall mean Employee Agents who were employed by Defendant in California during the period from November 20, 2016 through December 31,

---

[4] The Settlement and notice provided for up to $35,000.

2022 (the "Employee Class Period").

Doc. No. 34-2 at 52-53. As previously explained, Defendant has identified 2,769 Settlement Class Members.

## 2. <u>Settlement Relief</u>

The Settlement Agreement establishes a $3,000,000.00 common fund (i.e., the QSF) paid by Defendant within thirty (30) days of final approval to resolve the claims at issue in this action. *Id.* at 61. The Individual Payment Amounts from the QSF will be in the form of settlement checks mailed out to each of the Settlement Class Members for an amount commensurate with the number of Qualifying Work Weeks each of them worked during the Class Period. *Id.* at 54, 89, 98. The Settlement Administrator is then tasked with distributing Individual Payment Amounts by mail within seventeen (17) days of paying settlement administration costs, attorneys' fees and costs, Service Awards, and PAGA allocations to the LWDA. *Id.* at 68-69.

To the extent there are any payments made to the Settlement Class members that remained uncashed ninety (90) days after mailing, any uncashed checks will be delivered to the California State Controller's Office of Unclaimed Funds in the name of the authorized Settlement Class Member, along with the funds from the uncashed checks. *Id.* at 65.

## V. SETTLEMENT ADMINISTRATION

The Settlement Administrator's compliance with the Settlement Agreement and the Preliminary Approval Order is described below.

### A. Class Notice

The Settlement Administrator complied with the notice procedures set forth in the Settlement Agreement and Preliminary Approval Order. Admin Decl. ¶ 3. After having received a Class List from Defendant, the Settlement Administrator utilized the NCOA to update the addresses on that list before mailing out 2,769 mail

notices to Settlement Class Members on June 29, 2023. Admin Decl. ¶¶ 4-8.

The mailed notices that were sent out by the Settlement Administrator provided Settlement Class Members with information regarding the nature of the Action, a summary of the Settlement Agreement's material terms, the Settlement Class definition, the total number of Work Weeks the respective Settlement Class Members worked for Defendant during the Class Period, each Settlement Class Member's estimated Individual Payment Amount and the formula that was used in arriving to that payment, the dates making up the Class Period, how to dispute the number of Work Weeks, how to opt out of or object to the settlement, claims to be released, and the date for the Final Approval Hearing. Doc. No. 34-2 at 85-101; Admin Decl. ¶ 8, Exhibit ("Ex.") A.

Class Members were then generally given forty-five (45) days from the date on which Class Notice was mailed to respond to the Class Notice if they wished to object or request for exclusion or do nothing if they wished to be included in the Settlement. Doc. No. 34-2 at 60-61. Class Members whose Notice Packets were remailed were given another fifteen (15) calendar days from the remailing date to respond. *Id.* As of the August 14, 2023, response deadline, only 52 of the 2,769 mailed Notice Packets were deemed as undeliverable after the Settlement Administrator performed a skip trace of 192 returned Notice Packets, only 15 of the 2,769 Settlement Class Members requested exclusion, and absolutely no Settlement Class Member objected to the Settlement. Admin. Decl. ¶¶ 11-15. This amounts to direct mail notice reaching approximately 98.12% of the Settlement Class and participation of 99.46% of the 2,769 Settlement Class Members in the Settlement.

### B.    No Objections and Only Fifteen Requests for Exclusion

Settlement Class Members were permitted to opt-out or submit an objection to the settlement. Doc. No. 34-2 at 60-61. As of August 14, 2023, the Settlement Administrator has received only fifteen (15) requests for exclusion and zero (0) objections to the Settlement. Admin. Decl. ¶¶ 14-15. Settlement Class Members'

deadline to submit a request for exclusion or to object was August 14, 2023. *Id.* The fact that there are no objections, and only a small percentage of the Settlement Class requested exclusion is highly supportive of the proposed settlement's adequacy. *See, e.g., Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 U.S. Dist. LEXIS 235254, at *25-26 (N.D. Cal. Dec. 8, 2021) (out of 4,939 mailed notices, only one objection and no requests for exclusion received; court consequently found that the class members were given "the best notice practicable, and that such notice was adequate."); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV13-5963 PSG (GJSx), 2017 U.S. Dist. LEXIS 199172, at *8, *16-17 (C.D. Cal. May 8, 2017) (only one request for exclusion and no objections out of 330 class members led the court to conclude that the "class members find the settlement to be fair, reasonable, and adequate."); *Castillo v. Sheraton Operating Corp.*, No. CV 17-7091 FMO (ASx), 2020 U.S. Dist. LEXIS 38496, at *14-15 (C.D. Cal. Mar. 4, 2020) (finally approving class settlement with only one objection and ten requests for exclusion out of 4,649 class members, reasoning that "absence of large number of objections and exclusions to a proposed class action settlement supports approval of a settlement.").

## C. Settlement Checks

The Net Settlement Amount available to pay Settlement Class Members is estimated to be approximately $1,837,500.00, which was determined after subtracting from the gross Settlement Fund of $3,000,000.00 the anticipated combined Service Awards of $20,000.00; Class Counsel's requested attorneys' fees of $1,000,000.00, Class Counsel's requested costs of $18,945.85, administrative costs of $32,500.00, and PAGA payment to the LWDA of $75,000.00. *See* Admin. Decl. ¶ 18. Based on the Net Settlement Amount and the fact that 2,754 Settlement Class Members are to receive an Individual Payment Amounts, it is estimated that each Settlement Class Member is set to receive an average gross payment of $658.13, with an estimated highest gross payment of $5,035.25. *Id.*

## VI.    THE SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE

The relevant settlement factors demonstrate that the proposed settlement should be finally approved as fair, reasonable, and adequate.

### A.    The Settlement Satisfies the Requirements of Fed. R. Civ. P. 23

The Court has preliminarily determined that the proposed settlement satisfies Rule 23's requirements. Doc. No. 41 at 11. Plaintiffs analyzed and applied the relevant Rule 23(a) and (b) factors to the class in the Preliminary Approval Motion. *See* Doc. No. 34-1 at 15-21. There is no reason such findings should be disturbed. Since preliminary approval, Plaintiffs have continued to serve as adequate Class Representatives by reviewing documents and submitting declarations in support of the Fee Brief and the Final Approval Motion. *See* Kazerounian Decl. ¶ 6; Bell Decl., ¶ 8; Cook Decl. ¶ 19-26. Class Counsel have also continued to adequately represent the interests of the Settlement Class Members and the named Plaintiffs, having, among other things, filed the Fee Brief and otherwise assisted with settlement administration. Bacon Decl. ¶ 50; Kazerounian Decl. ¶¶ 7-8; Melili Decl. ¶¶ 13-22; Quintilone Decl. ¶ 27. Further, Class Notice was provided as required in the Preliminary Approval Order. *See generally* Admin. Decl.

### B.    The Settlement Should be Finally Approved by the Court

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 623 (9th Cir. 1982). "[T]he court may approve [a class settlement] only after a hearing and only on a finding that it is fair, reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e)(2). The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Spence-Ruper v. Scientiae*, No. 8:19-cv-01709-DOC-ADS, 2021 U.S. Dist. LEXIS 204242, at *4 (C.D. Cal. Sept. 24, 2021) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"To determine whether a settlement agreement meets these standards, a

district court must consider a number of factors[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). These factors include:

> The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*; *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 U.S. Dist. LEXIS 169270, at *9 (N.D. Cal. Nov. 27, 2013) (quoting *Churchill Vill., L.L.C. v. G.E.*, 361 F.3d 566, 575 (9th Cir. 2004)). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risk of litigation and the immediacy and certainty of a substantial recovery.

The Ninth Circuit has long supported settlement reached by capable opponents in arm's-length negotiations. In *Rodriguez v. West Publishing Corp.*, the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties." 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). The district court must exercise "sound discretion" in approving a settlement. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Chavez v. Converse, Inc.*, No. 15-cv-03746-NC, 2020 U.S. Dist. LEXIS 257679, at *13 (N.D. Cal. Nov. 25, 2020). However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair." *M.*

*Berenson Co. v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987), *cited approvingly in Create-A-Card, Inc. v. INTUIT, Inc.*, No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *14-15 (N.D. Cal. Sep. 22, 2009); *see also In re Ferrero Litig.*, No. 11-CV-00205-H (CAB), 2012 U.S. Dist. LEXIS 15174, at *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telecoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Applying the relevant factors here confirms that the Settlement should be finally approved, as it was reached only after the Parties had spent over three (3) years of litigation; participated in one (1) all-day mediation session before an experienced mediator, Hon. Daniel Buckley (Ret.), of Signature Resolution; and (4) exchanged extensive written formal and informal discovery. Based on the facts in this case, the extensive time and effort spent in litigating this case, and the likely risks of continuing to litigate this case, Plaintiffs and Class Counsel agree that this Settlement is fair, adequate, and reasonable. *See* Bacon Decl. ¶ 68; Kazerounian Decl. ¶ 10; Melili Decl. ¶ 26; Bell Decl. ¶ 9; Cook Decl. ¶ 10.

### 1. The Strength of the Lawsuit and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Defendant has raised several challenges to Plaintiffs' individual and putative class claims. As demonstrated by Defendant's successful Motion to Compel Arbitration (Doc. No. 3) and Motion for Summary Judgment in Cook's state court matter, Defendant vigorously defended the case and believes that its defenses have merit. *See also* Doc. No. 34-2 at 69-70 ("[n]either the acceptance nor the performance by Defendant . . . shall be claimed to be, construed as, or deemed to be an admission by Defendant . . . of any liability or guilt . . ..."). Plaintiffs are similarly confident that their individual and putative class claims have merit. Nevertheless, the Parties are fully aware that further litigation can pose substantial risk and expense to everyone involved. As such, the Parties agree that this California-only wage and hour class Settlement eliminates any further risk and expense that would inevitably

1    result from further litigating this action.

2         The Settlement here is fair, reasonable, and adequate considering the potential

3    risks and expenses associated with continued litigation, the probability of appeals by

4    either party, the certainty of delay, and the ultimate uncertainty of recovery through

5    continued litigation. As the Ninth Circuit has opined, the very essence of a settlement

6    agreement is compromise, "a yielding of absolutes and an abandoning of highest

7    hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted).

8    "Naturally, the agreement reached normally embodies a compromise; in exchange

9    for the saving of costs and elimination of risk, the parties each give up something

10   they might have won had they proceeded with litigation . . .." *Id.* (quoting *United*

11   *States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) (internal quotation marks

12   omitted)).

13        While Class Counsel believe strongly in the merits of the claims brought on

14   behalf of the Settlement Class, they also recognize that any case involves risk and

15   that settlements of contested cases are preferred in this circuit. Indeed, some courts

16   in this circuit have denied motions for class certification of wage and hour actions,

17   *see, e.g., Coleman v. Jenny Craig, Inc.*, No. 11cv1301-MMA (DHB), 2013 U.S.

18   Dist. LEXIS 176294, at *39 (S.D. Cal. Nov. 27, 2013), while others have granted

19   class certification of wage and hour claims on contested motions, *see, e.g., Caudle*

20   *v. Sprint/United Mgmt. Co.*, No. C 17-06874 WHA, 2018 U.S. Dist. LEXIS 213079,

21   at *19 (N.D. Cal. Dec. 18, 2018). Risks would remain regardless of whether Plaintiff

22   were to prevail at trial. *See, e.g., Alvarado v. Fed. Express Corp.*, 384 F. App'x 585,

23   590 (9th Cir. 2010) (reversing and remanding for a new trial on punitive liability and

24   damages after the plaintiff was awarded $300,000 in punitive damages); *Berkey*

25   *Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 623 (2d Cir. 1979) (reversing $87

26   million judgment after trial).

27        The risks in this action were examined in depth in the Preliminary Approval

28   Motion (Doc. No. 34-1 at 26-27) and Fee Brief. In short, if the action were to

proceed, Plaintiffs anticipates that Defendant would continue to challenge Plaintiffs' claims through class certification, trial, and/or arbitration hearing. *Id.* This is evidenced, in part, by Defendant's continued denial of liability (*see* Doc. No. 34-2 at 69-70) as well as the several defenses and contentions raised by Defendant throughout this litigation. Without settlement, the Parties would likely be forced to prepare for and argue a trial and/or arbitration hearing on the merits. Moreover, the lack of settlement approval would result in additional draining of resources by the courts, Parties, and alternative dispute resolution service providers since this Settlement involves two (2) cases that have been litigated for years in the Superior Court of California, the American Arbitration Association, and the U.S. District Court for the Southern District of California. Finally, were the cases to proceed with trials and/or arbitration hearings on the merits, any decision would face the possibility of being appealed and/or challenged, resulting in further delay, uncertainty, and expense.

The possibility of losing at trial and/or arbitration hearing further makes this settlement an acceptable compromise. *See Amadeck v. Capital One Fin. Corp. (In re Capital One Tel. Consumer Prot. Act. Litig.)*, 80 F. Supp. 3d 781, 791 (N.D. Cal. Feb. 12, 2015) (approving class settlement despite "serious obstacles to class certification").

### 2.   <u>The Amount Offered in Settlement</u>

As discussed above, the Settlement Agreement would require the Defendant to pay into an all-in, non-reversionary QSF of $3,000,000.00. The QSF shall be used to pay Individual Payment Amounts based on the number of Qualifying Work Weeks each Settlement Class Member worked during the Class Period, Plaintiffs' Service Awards, attorneys' fees and costs, administrative costs, and PAGA payment to the LWDA.

Since there are 2,754 Settlement Class Members who are to be included in this Settlement, the estimated average gross Individual Payment Amount to each

Settlement Class Member is estimated to be approximately $658.13, with an estimated highest gross payment of $5,035.25. Admin Decl. ¶ 18. The estimated payment is a significant result for Settlement Class Members, who were not required to submit a claim form to be eligible to receive payment and will automatically receive payment since none of them opted out.

Though the amount the Parties eventually settled for ($3,000,000.00) is between 6.6% to 12% of the maximum recoverable damages (Doc. No. 34-2 at 28-30), that amount is justified by the substantial risks Plaintiffs face with continued litigation (*Id.* at 30). Indeed, that result is consistent with the results obtained in similar class action settlements. *See, e.g., Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC (ANx), 2014 U.S. Dist. LEXIS 83796, at *19-20 (C.D. Cal. June 12, 2014) (granting final approval of California labor class with individual recovery representing 20-40% of best-case for individual class members); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *9 (N.D. Cal. Nov. 26, 2007) (approving 25% of maximum recovery). Indeed, the Court has previously determined that "[w]hile the maximum recoverable damages for the class might allegedly be $25,000,000 or more . . . the time, expense, and risk of an adverse verdict on the contested issues are real and make the agreed settlement fair and reasonable." Doc. No. 41 at 14.

Finally, the estimated average recovery of $658.13 by each Settlement Class Member represents an exceptional individual recovery when compared to similar wage and hour class actions. *See, e.g., Wert v. United States Bancorp*, No. 13-cv-3130-BAS-AGS, 2017 U.S. Dist. LEXIS 185428, at *18-19 (S.D. Cal. Nov. 7, 2017) (class members each set to receive an average payout of up to $384.52); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 U.S. Dist. LEXIS 80776, at *48 (E.D. Cal. June 11, 2012) (approving wage-and-hour class settlement where each class member set to receive an average of approximately $198.70; compiling cases where recovery per class member was less than $90.00).

1
2

**3.     Settlement Class members were Provided with the Best Notice Practicable, Affording Them an Opportunity to Determine Whether to Participate in the Settlement**

3      Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3) the

4   court must direct to class members the "best notice that is practicable under the

5   circumstances[.]" Rule 23(c)(2)(B) does not require "actual notice" or that notice be

6   "actually received[.]" *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

7      As previously explained, mail notice reached approximately 98.12% of the

8   Settlement Class, and about 99.46% of the 2,769 Settlement Class Members who

9   were mailed Class Notice are deemed to be participating in the Settlement (*see*

10  Admin. Decl., ¶ 17). This easily satisfies due process. *See Romero v. Producers*

11  *Dairy Foods, Inc.*, 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) ("First class mail is

12  ordinarily sufficient to notify class members who have been identified"); *Morey v.*

13  *Louis Vuitton N. Am. Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS

14  3331, at *11-12 (S.D. Cal. Jan. 9, 2014) (finding that mail and email notice "fully

15  complied with due process principles").

16            **4.     The Extent of Discovery Completed**

17      The Parties conducted significant written formal and informal discovery

18  before reaching a settlement. Bacon Decl. ¶¶ 16, 45; Melili Decl. ¶¶ 15-16, 20;

19  Quintilone Decl. ¶ 14-19. *See also* Doc. No. 41 at 3. With all this discovery

20  completed, the litigation has reached a point where both Parties have "a clear view

21  of the strengths and weaknesses of their cases." *Schuchardt v. Law Office of Rory*

22  *W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016) (internal quotation marks omitted).

23  Thus, the Parties have exchanged more than enough information to make an

24  informed decision about settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d

25  1234, 1239 (9th Cir. 1988) ("In the context of class action settlements, 'formal

26  discovery is not a necessary ticket to the bargaining table where the parties have

27  sufficient information to make an informed decision about settlement.'").

28            **5.     The Experience and Views of Counsel**

While the Court should not blindly follow counsel's recommendations, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). The presumption of reasonableness in this action is fully warranted because the settlement was the product of arm's-length negotiations by capable, experienced counsel who have "an intimate familiarity with [the] lawsuit after spending years in litigation[.]" *Id. See also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.

It is the judgment of Class Counsel experienced in complex class action litigation that this settlement is fair, reasonable, and adequate, benefiting all Settlement Class Members involved. *See* Bacon Decl. ¶ 68; Kazerounian Decl. ¶ 10; Melili Decl. ¶¶ 27-28; Quintilone Decl. ¶ 5; Doc. No. 41 at 12-13 ("Given Plaintiffs' counsel's experience with similar class action litigation, the Court finds that affording deference to their decision to settle the case, as well as the terms of the settlement, is appropriate."). Indeed, as demonstrated by their accompanying declarations, Class Counsel are highly experienced consumer class action and wage-and-hour lawyers who have been recognized for their knowledge and experience in complex consumer class action litigation. *See* Bacon Decl. ¶¶ 30-45; Kazerounian Decl., ¶ 13 (citing Doc. Nos. 34-3); Melili Decl. ¶¶ 7-11; Quintilone Decl. ¶ 5. Thus, Class Counsel now unequivocally assert that the Settlement should be finally approved by this Court. *See* Bacon Decl. ¶ 68; Kazerounian Decl., ¶ 13; Melili Decl. ¶¶ 27-28; Quintilone Decl. ¶ 5.

### 6. Positive Reaction of Settlement Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class

KAZEROUNI LAW GROUP, APC

settlement action are favorable to the class members." *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 529 (citations omitted). The absence of any objections here and the handful of objections here (Admin. Decl. ¶ 15) is an important factor in evaluating the fairness, reasonableness, and adequacy of settlement; it also supports approval of the settlement here. *See Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of . . . Settlement."). Therefore, the overwhelmingly positive reaction to this settlement further supports final approval of the Settlement.

## VII. CALIFORNIA CONTROLLER'S OFFICE WILL RECEIVE UNCLAIMED FUNDS

Consistent with the Settlement Agreement's terms and Cal. Civ. Proc. Code § 384, Plaintiffs request that funds remining in the QSF be transmitted to California Controller's Office. Specifically, no funds will revert to Defendant, and any payments made to participating Settlement Class Members that remain uncashed ninety (90) days after mailing shall be transmitted to the California Controller's Unclaimed Property Fund in the name of the Class Member, thereby leaving no "unpaid residue" subject to the requirements of California Civ. Proc. Code § 384(b).

## VIII. CONCLUSION

In sum, the parties have reached this Settlement following extensive arms' length negotiations before Hon. Daniel Buckley (Ret.). The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiffs respectfully request the Court:

- Grant final approval of the proposed Settlement;
- Order payment from the settlement proceeds to Class Members in compliance with the Court's Preliminary Approval Order and the Settlement Agreement;
- Grant the Motion For Attorney's Fees and Costs;

- Award an Service Awards to the Class Representatives;
- Enter the proposed Final Judgment and Order of Dismissal with Prejudice submitted herewith; and
- Retain continuing jurisdiction over the implementation, interpretation, administration and consummation of the Settlement.

Dated: September 6, 2023          **THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By:  /s Todd M. Friedman
                TODD M. FRIEDMAN, ESQ.
                ATTORNEYS FOR PLAINTIFF

# CERTIFICATE OF SERVICE

Filed electronically on this 6th day of September, 2023, with:

United States District Court CM/ECF system

Notification sent electronically via the Court's ECF system to the Honorable Court and all Counsel of Record As Recorded On The Electronic Service List.

This 28th day of July, 2022,

s/Todd M. Friedman, Esq.
Todd M. Friedman