UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BELL and DEVIN COOK, individually and on behalf of others similarly situated,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>REDFIN CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | Case No.:  20-cv-02264-AJB-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; and**<br><br>**(2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>**(Doc. Nos. 43, 44)** |

　　　　Presently before the Court is Plaintiffs Jason Bell and Devin Cook's (collectively, "Plaintiffs") motions for final approval of class action settlement and for attorneys' fees. (Doc. Nos. 43, 44.) Defendant Redfin Corporation has filed an affidavit and declaration in support of the motions. (Doc. Nos. 45, 47.) The deadline to object to the Settlement was August 14, 2023. The Court held a hearing on Plaintiffs' Final Approval Motion on November 27, 2023, at 3:00 p.m. No other parties or Class Members appeared at the noticed hearing. For the reasons stated herein, the Court **GRANTS** Plaintiffs' motions in their entirety and orders distribution of all settlement proceeds as detailed below.

## I. BACKGROUND

Between November 20, 2016, and December 31, 2022, Plaintiffs and other similarly situated individuals were employed by Defendant as real estate agents in the State of California. (Doc. No. 34-1 at 10.) During this time, Defendant paid under two structures—one structure as employees ("Employee Agents") and the other as independent contractors ("Associate Agents"). (*Id.*) Plaintiffs assert they and other Class Members were not paid all wages owed, including for overtime and regular hours for which they were not compensated at the correct wage rate. (*Id.*)

Bell worked for Defendant from January to December 2019, first as an Employee Agent and thereafter as Associate Agent. (*Id.*) Cook worked for Defendant from approximately May 4, 2016 to June 18, 2019 as an Associate Agent. (*Id.*)

On November 20, 2020, Bell filed a putative class action complaint against Defendant in this Court, alleging claims on behalf of himself and other employees of Defendant for: (1) unpaid overtime; (2) unpaid regular wages; (3) unpaid minimum wages; (4) unpaid regular wages; (5) unpaid meal period premiums; (6) unpaid rest period premiums; (7) waiting time penalties; (8) failure to provide accurate wage statements; (9) willful misclassification of individuals as independent contractors, (10) violation of California Business and Professions Code § 17200, *et seq.*, ("UCL"); and (11) violation of the Private Attorneys General Act ("PAGA"), California Labor Code § 2699. (Complaint, Doc. No. 1.)

Defendant thereafter filed a Motion to Compel Arbitration and Stay Action on December 2, 2020, which was fully briefed by the parties. (Doc. No. 34-1 at 11.) The Court then issued an order staying Bell's claims under PAGA pending arbitration on August 12, 2021. (*Id.*)

Similarly, Cook filed an action against Defendant on August 29, 2019, alleging claims of: (1) failure to pay wages under California's Fair Labor Standards Act; (2) failure to pay wages including overtime compensation; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to furnish accurate itemized wage statements;

(6) failure to pay wages for hours worked; (7) failure to comply with written request to inspect or copy records; (8) failure to reimburse business expenses; (9) failure to pay wages upon termination of employment; and (10) violations of the UCL. (*Id.*) On January 30, 2020, Cook filed a First Amended PAGA Complaint, removing all previous causes of action but seeking civil penalties under PAGA. (*Id.*)

A significant amount of formal and informal discovery was exchanged, including data produced by Defendant for 2,034 workers, showing their total pay and dates of employment, and documents related to time and payroll records, as well as policy and procedure documents. (*Id.*) After significant discovery, Cook's action was set for trial for June 6, 2022, when the parties agreed to globally mediate the two actions. (*Id.* at 11, 26.)

The parties attended an all-day mediation session before Hon. Daniel Buckley (Ret.) on May 23, 2022, eventually resulting in a settlement in-principle after a mediator's proposal was accepted by all parties. (*Id.* at 12.) On March 21, 2023, Plaintiffs filed a consolidated class action complaint asserting all claims alleged in both actions. (*See* Doc. No. 23.)

## II. SETTLEMENT AGREEMENT

Plaintiffs and Defendant have executed a Stipulation of Settlement and Release of Claims ("Settlement Agreement" or "Settlement"). The primary terms of Settlement are provided below:

- Defendant will pay Three Million Dollars ($3,000,000.00) (the "Gross Settlement Amount"), in addition to the employer's share of payroll taxes, to settle the Claims of Plaintiffs and Class Members consisting of individuals who are members of either class:
  - "Associate Agent Class" shall mean all Associate Agents who provided services to Defendant as Independent Contractors in California during the period April 30, 2017 through December 31, 2022 (the "Associate Agent Class Period").
  - "Employee Agent Class" shall mean all Employee Agents who were

3

        employed by Redfin in California during the period from November 20, 2016 through December 31, 2022 (the "Employee Class Period").

- In addition to the Individual Settlement Payments to Participating Class Members, the Gross Settlement Amount will be used to pay:
    1. The Class Representative Enhancement Payment to Plaintiffs ($20,000.00);
    2. Class Counsel's Fees ($1,000,000.00);
    3. Class Counsel Costs ($18,945.85);
    4. The PAGA award of $100,000.00, $75,000.00 of which will be paid to the Labor and Workforce Development Agency with the remaining $25,000.00 distributed among the Aggrieved Employees; and
    5. Settlement Administration Costs ($32,500.00).
- After deducting the above fees and costs, the remaining balance available for distribution (the "Net Settlement Amount") shall be distributed to the Participating Class Members. The Net Settlement Amount will be at approximately $1,837,500.00, and the fact that 2,754 Participating Class Members are to receive Individual Payment Amounts, it is estimated that each Settlement Class Member is set to receive an average gross payment of $658.13, with an estimated highest gross payment of $5,035.25
- Upon the complete funding of the Gross Settlement Amount and all applicable employer-side payroll taxes, upon final approval Plaintiffs and the Participating Class Members release the Released Parties from each of the Class Members' Released Class Claims defined in the Settlement Agreement. There is no waiver under California Civil Code § 1542, and thus the Released Claims are narrow in scope and limited to the claims asserted in the Action and per the terms of the Settlement Agreement.

(*See* Doc. No. 34-2 at 50–101, Stipulation of Settlement and Release of Claims ("Stipulated Settlement"); Doc. No. 43.)

///

## III. LEGAL STANDARD

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). The Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when presented with a motion to finally approve a class action settlement, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

## IV. MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

### A. Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). In the present case, the Court previously granted Plaintiffs' motion for conditional class certification. (*See* Doc. No. 41.) Accordingly, the Court reaffirms and incorporates by reference its prior analysis under Rules 23(a) and (b)(3) as set forth in its Order Granting Plaintiffs' Motion for Conditional Class Certification. (*See id.* at 6–11.)

### B. Adequacy of Notice

Next, the Court must determine whether the Class received adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.*

In its Preliminary Approval Order, the Court preliminarily approved the Parties' proposed notice and notice plan. (*See* Doc. No. 41 at 17.) As part of their Final Approval Motion, Plaintiffs filed the Declaration of Nicole Bench, who is "a Case Manager for ILYM Group, Inc., . . . the professional settlement services provider who has been retained

by the Parties' Counsel and subsequently appointed by the Court to serve as the Settlement Administrator for [the instant case]." (Declaration of Nicole Bench ("Bench Decl."), Doc. No. 43-5, ¶ 1.) In her declaration, Ms. Bench details the actions taken by ILYM Group, Inc. ("ILYM Group") to provide notice in accordance with the Preliminary Approval Order. (*Id.* ¶¶ 3–12.) Ms. Bench states that on June 29, 2023, the Notice Packets were mailed to all 2,769 individuals contained on the Class List. (*Id.* ¶ 8.) Of those, 52 Notice Packets have been deemed undeliverable, there have been 15 requests for exclusion, no objections, and 7 disputes from Settlement Class Members. (*Id.* ¶¶ 13–16.) On August 7, 2023, Defense Counsel resolved all 7 disputes. (*Id.* ¶ 16.) As of September 6, 2023, there was a total of 2,754 Participating Class Members, representing 99.46% of the 2,769 Settlement Class Members. (*Id.* ¶ 17.) Having reviewed Ms. Bench's declaration, the Court finds the Settlement Class received adequate notice of the Settlement.

        C.       **Fairness of the Settlement**

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(1)(C), while considering the fairness factors.

In its Preliminary Approval Order, the Court addressed each of the fairness factors in turn and found all the pertinent factors weighed in favor of approving the Settlement. (*See* Doc. No. 41 at 11–15.) Among other criteria, the payment of the $3,000,000.00 as a settlement payment to settle and resolve all claims in the action by or on behalf of the 2,754 Class Members against Defendant is a fair, reasonable, and appropriate settlement amount to resolve all claims in this action. Fifteen Class Members have filed a request for exclusion, there has been no objection against the settlement, and there are seven resolved disputes from Class Members. (Bench Decl. ¶¶ 14–16.) Because no pertinent facts have changed, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. (*See* Doc. No. 41 at 11–15.) Accordingly, the Court finds the settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

## V. ATTORNEYS' FEES AND COSTS

### A. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942; *see Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."). Irrespective of which methodology a court uses, the court cannot apply it mechanically or formulaically, but must ensure that the fee award is reasonable. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

Under the percentage-of-recovery method, the benchmark for a reasonable fee award is 25% of the common fund. *Id.* However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1995)). The court must consider all the circumstances of the case to determine an appropriate rate, including the results achieved, the risk counsel took in pursuing the case, incidental or non-monetary benefits of the litigation, and the time and money counsel expended on the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, Class Counsel request attorneys' fees of $1,000,000.00, or one-third of the $3,000,000.00 from the proposed settlement. (Doc. No. 44 at 8.) This amount exceeds the benchmark rate of 25%, the lodestar amount, which according to Class Counsel is $864,044.78, approximately resulting in a 1.15 positive multiplier. (*Id.* at 19, 22.)

Specifically, Class Counsel assert a departure from the benchmark rate is justified because they obtained "an excellent recovery" for the class as compared to similar cases, (*see id.* at 15); performed significant factual investigation and written discovery, participated in extensive formal and informal discovery, and vigorously negotiated for the benefit of the Class Members, (*id.* at 18); and undertook this action on a contingency-fee basis, (*id.*). As for the lodestar method, Class Counsel have worked 648.9 hours on this matter, with hourly rates ranging from $900.00 per hour for Mr. Friedman, to $180.00 per hour for paralegals. (*See id.* at 21.) Class Counsel contend that the base lodestar of $864,044.78 is justified because they "prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case." (*Id.* at 22.) Moreover, Class Counsel assert "that the complexity of this matter was high[.]" (*Id.*)

Courts in this Circuit have routinely authorized similar awards. *See, e.g.*, *Ripee v. Bos. Mkt. Corp.*, No. 05cv1359 BTM (JMA), 2006 WL 8455400, at *4 (S.D. Cal. Oct. 10, 2006) (award of 40% of $3,750,000 wage and hour class action settlement); *Stuart v. RadioShack Corp.*, No. C-07-4499-EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (finding 33% fee award "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"). Based on the foregoing, the Court finds the requested amount of attorneys' fees reasonable and approves the award in the amount of $1,000,000.00.

B. **Litigation Expenses**

In their motion, Plaintiffs seek an award of $18,945.85 in litigation costs incurred through September 5, 2023. (Doc. No. 44 at 24.) Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. No Class Member has objected to the request for reimbursement of $18,945.85 in costs. The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class, and shall be reimbursed in full in

the amount requested. The Court approves the request for litigation costs and expenses in the amount of $18,945.85.

### C. Administrative Costs

Plaintiffs request the Court to award $32,500.00 to ILYM Group, the appointed Settlement Administrator, from the Total Settlement Fund of $3,000.000.00. (Doc. No. 43 at 18.) In this settlement, ILYM Group took steps to implement notice of the settlements, including:

> (a) printing and mailing the *Notice of Proposed Class Action Settlement* . . . ; (b) receiving and processing requests for exclusion and objections to the Settlement, if applicable; (c) resolving Settlement Class Members' disputes over the number of Work Weeks Defendant has record of them working during the Class Period, . . . ; (d) establishing a QSF account and calculating individual settlement award amounts; (e) processing and mailing settlement award checks; (f) handling tax withholdings as required by the Settlement and the law; (g) preparing, issuing and filing tax returns and other applicable tax forms; (h) handling the distribution of any unclaimed funds pursuant to the terms of the Settlement; and (i) performing other tasks as the Parties mutually agree to and/or the Court orders ILYM Group to perform.

(Bench Decl. ¶ 3.)  Courts regularly award administrative costs associated with providing notice to the class. *See Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *9 (S.D. Cal. Apr. 1, 2020) (awarding $50,000 for administrative costs). The Court concludes ILYM Group's costs were reasonably incurred for the benefit of the Class. The Court approves Class Counsel's request for administrative costs in the amount of $32,500.00.

### D. Incentive Awards to Class Plaintiffs

Finally, the Settlement Agreement provides the Class Representatives will each receive $10,000 to be paid from the Total Settlement Fund of $3,000,000.00, for a total of $20,000.00. (Doc. No. 44 at 25.)

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class actions cases" and "do not, by

themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal citation and quotations omitted). Named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. Factors to consider in determining whether to approve an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012).

Named Plaintiff Bell submitted a declaration detailing his efforts in this litigation, explaining that he "sought the advice of [his] attorneys in this matter" and "assisted [his] attorneys in their preparation of both the Class Action Complaint and Consolidated Class Action Complaint, mediation-related investigations, formal and informal discovery, and [his] declarations in support of preliminary and final approval of class action settlement." (Declaration of Jason Bell, Doc. No. 43-4, ¶ 8.) Similarly, Named Plaintiff Cook states she "actively participated in the prosecution of this case" and "spent many hours working directly with [her] attorneys[,]" including helping her "attorneys write discovery questions and helped them to review hundreds of pages of documents of samples of payroll records during discovery and to prepare for mediation." (Declaration of Devin Cook, Doc. No. 34-6, ¶ 18.)

No objections were lodged to the proposed service awards. Accordingly, the Court finds the service awards to the Class Plaintiffs are appropriate.

///

///

## VI.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiffs' motions for final approval of the Settlement and for attorneys' fees. The Court further **ORDERS**:

1. Defendant Redfin Corporation to pay the Settlement Amount of $3,000,000.00 as a no reversionary settlement payment to settle and resolve all claims in the action by or on behalf of the 2,754 Class Members against Defendant. Within thirty (30) calendar days of the Final Approval of the Settlement, as defined in the Agreement, Defendant will deposit the Gross Settlement Amount into a Qualified Settlement Fund to be established by ILYM Group, Inc. In accordance with future orders of this Court, the Settlement Amount will only be used to pay: the claim shares to the 2,754 Class Members; the PAGA Payment; the settlement claims administrator; the awarded service fees; and attorneys' fees, costs, and expenses incurred in the action.

2. As soon as practicable after receipt of the $3,000,000.00, ILYM Group must distribute all of the $3,000,000.00 by paying Class Counsel's attorney's fees and costs as stated above; distributing checks for the service awards as stated above; withdrawing its administrative costs as stated above; and distributing the proportional share of balance of the money among the 2,754 Participating Class Members as indicated in the Declaration of Nicole Bench supporting Plaintiffs' Motion for Final Approval, ¶ 18, including as provided by Section III.G.7 of the settlement agreement:

> To the extent there are any payments made to Settlement Class Members that remain uncashed **one ninety** [sic] **(90) days after mailing**, any uncashed check will be delivered to the **California State Controller's Office of Unclaimed Funds** in the name of the authorized Settlement Class Member, along with the funds from the uncashed checks.
> Additionally, this is a non-reversionary Settlement, and any amounts for the allocations of payments from the Settlement Sum that are not finally approved by the Court will be added to the Class Member Settlement fund to be distributed to Participating Class Members. Accordingly, there will be no unpaid residuals. Therefore, the parties

    agree and stipulate that California Code of Civil Procedure § 384 is inapplicable.

3. In exchange for the Settlement Amount, Redfin Corporation is also **DISMISSED WITH PREJUDICE**. The releases by the Participating Class Members afforded Defendant is strictly limited to the claims in the action in Section V of the Settlement Agreement, which provides that upon the Final Effective Date, in and for the valuable consideration as provided in the Settlement Agreement, each of the 2,754 Class Members agree that they forever discharge, waive, and release Defendant from any and all claims, demands, obligations, actions, causes of action, damages, arising from the First Amended Complaint ("FAC"), to include the FAC and all Counts and all forms of relief sought by the 2,547 Class Members through the FAC against Defendant, that arose within the Class Period certified by the Court.

4. The Court **DISMISS WITH PREJUDICE** the Action and all Released Claims. These dismissals are without costs to any party, except as specifically provided in the Agreement. The Settlement shall be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of the Plaintiffs, Settlement Class Members, and Releasing Parties.

5. Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over: (a) implementation and enforcement of the Agreement pursuant to further order of the Court until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the Parties shall have been performed pursuant to the Agreement; (b) any other action necessary to conclude this Settlement and to implement the terms of the Agreement; and (c) the construction and interpretation of the Agreement.

6. The Court will hold a full compliance hearing on April 29, 2024 at 2 p.m. Counsel

//
//
//

may file a status report in advance of this hearing, and if the status is that full compliance has been achieved, the Court will vacate this hearing.

**IT IS SO ORDERED.**

Dated: November 28, 2023

Hon. Anthony J. Battaglia
United States District Judge